Scott, C. J.
It is claimed by the plaintiff in error, that the probate co.urt erred in overruling his demurrer to the answer of de.fendants.
That demurrer was-general, and went to the whole answer; and was properly overruled, if either of the defenses set up was suffi.cient to bar the action.
The section of the statute under which this suit was brought ■contains a proviso as follows: “Provided, that in all cases in which service of process shall have been made upon such . . . . guardian by publication, .... the surety shall be permitted to make the same defense as the .... guardian could have made.”
It is claimed by the plaintiff that because the sureties were personally served with process, they can, under this proviso, interpose only such defense as may have arisen after the rendition of judgment against their principal. This is clearly a mistake. Their right to make the same defense as the guardian could have made, ■depends, not on the manner in which they were brought into court, but on the manner in which the appearance of their principal (Coblentz) was obtained, when the judgment was rendered to which it is sought to make them parties. Whether their principal was brought in by publication, or by personal service of summons, does not appear. But even if Coblentz had been personally served with process, still we think the sureties might aver and prove that the plaintiff was not the guardian of Long, and could not therefore maintain an. action against them as such. Such a defense must be permitted, or the sureties might be liable to a double accountability —once in' this action, and again when sued by the real guardian.
This, at least, was a good defense, and the demurrer to it was properly overruled.
*The jury was instructed; on the trial of this cause, that a guardian could not be legally appointed for a deaf and dumb person until the fact of his being a deaf and dumb person, of full age, and 'incapable of taking charge of his affairs, had been first found by *422 the verdict of a jury of five freeholders, duly summoned, impaneled, and sworn for that purpose, pursuant to the provisions of the-first section of the act of March 9, 1838. 1 Curw. 407.
That act had relation mainly to lunatics, insane persons, and idiots; and its first section provided for an inquest of lunacy, to beheld by an associate judge of the court of common pleas and a jury of five freeholders. In section 17 authority was given to the court of common pleas “ to appoint guardians to all such deaf and dumb-persons, of full age, who may prove to be incapable of taking charge of their affairs; ” and it was directed that, in all cases, the proceedings to establish such incapacity should be according to the provisions of section 1 of the act. The whole of this act, except section 17, was repealed by the act of March 19, 1850, on the same subject, which wholly dispensed with a jury in inquests of lunacy. 2 Curw. 1598.
Now it may well be doubted whether the intention in saving this-seventeenth section from repeal, was not merely to continue in force the power of appointing guardians in the class of cases for which it had provided, without intending thereby to continue in force the old mode of holding inquests in such cases, which was wholly changed in regard to lunatics. But were it otherwise, still the constitution of 1851 abolished the office of associate judge, and so rendered it impossible to hold -an inquest in the mode provided by the act of 1838; and under the system of distinct probate courts, inaugurated by the present constitution, power was expressly conferred on those courts “to make inquests respecting lunatics, insane persons, idiots, and deaf and dumb persons subject by law to-guardianship,” without requiring the intervention of a jury in such inquests.
The act of April 7, 1856, in regard to the regulation of lunatic asylums, and the care of idiots and the insane, expressly provides-in section 41: “That the probate judge,-upon *satisfactory proof that any person resident of the county, or having a legal settlement in any township thereof, is an idiot or lunatic, and that it i 3 necessary, in order to preserve the property of such idiot or lunatic, shall appoint a guardian,” etc. Here it is clear that no jury is required in the inquest of idiocy or lunacy; and we think the effect of this legislation was necessarily to abrogate or supersede, in all cases of guardianship, the mode of inquest by a jury impaneled before an associate judge, or elsewhere.
*423 We think therefore that a guardian- might be legally appointed by the probate court for a deaf and dumb person, of full age, who is-found by -the court to be incapable of managing his affairs, without, submitting the question of his incapacity to .a jury of any kind and that the court below erred in' instructing the jury otherwise.
On the trial below, the jury were instructed to inquire whether' any irregularities had occurred in the proceedings for the appointment of the alleged guardians, and whether such appointments had-been'made without sufficient proof of the facts necessary to-warrant them; and parol evidence was permitted to be offered for the purpose of proving such irregularities and defect of proof,
In all this the court below erred. No such inquiry should have-been allowed.
We admit that there are certain inferior jurisdictions in respect to which the rule is that they must appear to have pursued their authority strictly, and that no intendment shall be made in their favor. But this rule is not applicable to the probate courts-of this state. By the constitution they are declared to be courts of record, and are invested with full jurisdiction, in probate and testamentary matters, in the appointment of administrators and guardians, and in the settlement of their accounts, etc.; and the act defining their jurisdiction, and providing for their organization, gives them exclusive jurisdiction, among other things, “ to appoint and remove guardians, to direct and control their conduct, and to settle their accounts.” The same act declares that the probate court shall have a seal, under which all its writs and process shall be issued ; and that all transcripts issuing from *said court, under the seal thereof, and signed by the judge thereof, shall be received as evidence of the facts therein contained, in all the courts of this state. Said court is also required to keep—(1) a criminal record; (2) a civil docket; (3) a journal; (4) a record of wills; (5) a final record; (6) a record of accounts; “ which shall contain an entry of the appointment of executors, administrators, and guardians, and all partial and final accounts of executors, administrators, and guardians, and the orders and proceedings of the court thereon.” While the statute requires the record to contain “ an entry of the appointment” of all guardians, it nowhere requires that the record shall show the existence of a state of facts such as to warrant the exercise of its authority, or the evidence upon which the court relied, in making’the appointment. Nor does any rule of law require- *424 this of such a court. True, it is a court of limited jurisdiction, and it is equally true that the jurisdiction of each of the courts of the state is expressly limited, either by the constitution or by statute. But as was said in the case of Sheldon v. Newton (3 Ohio St. 500), “ the distinction is not between courts of general and those of limited jurisdiction, but between courts of record, that are so constituted as to be competent to decide on their own jurisdiction, and to exercise it to a final judgment, without setting forth the facts and evidence on which it is rendered, and whose records, when made, import absolute verity; and those of an inferior grade, whose decisions are not, of themselves, evidence, and whoso judgments can be looked through for the facts and evidence which are necessary to sustain them. Orphans’ courts and courts of probate, when constituted courts of record, have uniformly been held of the former ■description.” And the authorities cited in that case fully sustain these positions.
Proceedings for the appointment of guardians, are not inter partes, or adversary in their character. They are properly proceedings in rem; they are instituted, ordinarily, by application made on behalf of the ward, and for his benefit; and the order of appointment binds all the world. In such a proceeding, plenary and exclusive jurisdiction of the subject-matter, has been conferred by statute on the probate court, *and that jurisdiction attaches, whenever application is duly made to the court for its exorcise in a given case. It is not essential to the jurisdiction, that the ward be actually before the court, unless, by reason of his right to choose a guardian, or for ■other cause, the statute so require. And when jurisdiction has attached, the court has full power to hear and determine all questions which arise in the case, whether in regard to the status of the ward or otherwise; and no irregularity in the proceedings, or mistake of law in the decision of the questions arising in the case, will render the order of appointment void, or subject it to impeachment collaterally. All questions necessarily arising in the case, becomes res adjudicates, by the final order of appointment, which binds all the world, until set aside or reversed by a direct proceeding for that purpose. The facts thus ascertained, and the sufficiency of the evidence upon which they were found by the proper court, can not be collaterally inquired into and determined de novo upon parol testimony. "Where the record shows nothing to the contrary, it will foe conclusively presumed, in collateral inquiries, that the final order *425 ■was made upon a proper showing, by the proofs, of all the facts necessary to authorize it. The- authorities referred to in Newton v. Sheldon, supra, and many others, 'clearly settle these principles.
The record shows, that at -¿he several times when guardians were appointed for Harry Long, he was found by the court to be a mute. He may also have boen found to be deaf as well as dumb, and inca pablo of managing his affairs. That .these facts were found by the •court, will be conclusively presumed -from the order of appointment, if that order can be authorized only by such a finding. And there is certainly nothing to weaken this presumption, in the fact that the jury in this case have found, by their verdict, that at the time of both appointments, Long was the proper subject of guardianship. Tot the jury was led, by the parol evidence improperly admitted, and by the charge of the court, to find neither guardian legally appointed ; perhaps because, in .their opinion, sufficient evidence was not presented at the times of appointment, to establish what they yet find to have been the facts of the case.
*The court erred in charging the jury with the task of investigating this question; and all the parol evidence objected to by the'plaintiff should have been excluded.
But there is another ground upon which these defendants should not have been permitted to gainsay the regularity of the appointment of their principal, Coblentz, as the guardian of Harry Long. 'They were sued upon his bond as such guardian, which was executed by them as his sureties; and this'bond recites the appointment of Coblentz, by the proper authority, as the guardian of Long. By executing this bond, they obtained for their principal the possession and control of his ward’s property, and can not now be permitted to escape liability to account therefor by denying the .recitals of their own bond. They are estopped 'to do so. Douglass v. Scott, 5 Ohio, 198.
This case was tried by a jury, called at the instance of the plaintiff. The statute under which the suit was brought, gives either party the right to appeal from the judgment of the probate court, and authorizes bills- of exceptions to be taken upon trial; but we find no provision for the intervention of a jury. Of this irregularity the plaintiff does not complain; and as it occurred at his • own instance, he would have no right to. do so. We allude to the fact only to exclude the conclusion that we recognize the right of the parties to demand a trial by jury in such a case.
*426 The court of common pleas erred iu affirming the judgment of' the probate court, and we therefore reverse both judgments, and remand the case to the probate court for trial de novo.
Hat, White, Welch, and Brinkerhoee, JJ., concurred.